UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPARKLE THOMPSON o/b/o J.W.,

                Plaintiff,                       Case No. 05-73525

vs.

                                                  HONORABLE GERALD E. ROSEN

JO ANNE B. BARNHART,                   HONORABLE STEVEN D. PEPE
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION**

## I.     Background

Plaintiff brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) to challenge a final decision of the Commissioner regarding her application for Child's Supplemental Security Income under Title XVI of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is Recommended that Plaintiff's motion for summary judgment be **DENIED** and Defendant's motion for summary judgment be **GRANTED**.

### A.    <u>Procedural History</u>

On April 1, 2003, Sparkle Thompson ("Plaintiff") filed an application for child's Supplemental Security Income (SSI) on behalf of her son, ("Claimant"), alleging that he had been disabled since December 12, 2002, due to hearing loss in the right ear, a heart murmur, and attention deficit hyperactivity disorder (ADHD) (R. 46-49). After Plaintiff's claim was initially

1

denied (R. 26, 31-33), a hearing was held on November 30, 2004, before Administrative Law

Judge (ALJ) Joseph Brezina (R. 180-96).  Plaintiff was not represented by counsel.[1]

In a January 26, 2005, decision ALJ Brezina concluded that Claimant was not under a

disability as defined by the Act because Claimant did not have an "extreme" limitation in one

area of functioning or a "marked" limitation in two areas (R. 13-23).  On December 20, 2005, the

Appeals Council denied Plaintiff's request for review (R. 4-6).

**B.**    **Background Facts**

Claimant was seven years old at the time of the ALJ's decision (R. 182).  He was

attending second grade in regular education classes (R. 193).  Claimant lived with his mother,

younger brother, age 6, and sister, age 5, and got along well with them (R. 191).  At home, he

had temper tantrums and pouted when he did not get his way.

**1.**    ***Plaintiff's Hearing Testimony***

On November 30, 2004, Plaintiff appeared with her son and testified before ALJ Brezina

(R. 180-92).  She identified her son's primary reasons for disability as hearing loss in his right

ear and attention deficit hyperactive disorder ("ADHD") (R. 185).  Claimant was diagnosed with

hearing loss in November 2002 and ADHD in 2003 (R. 188).  To address his hearing loss,

Claimant had been fitted for a hearing aid, his school used a sound system to help him

understand what the teacher was saying ("FM System"), and he saw a hearing-impaired

consultant twice a week (R. 185-86).  With these measures, Claimant's hearing condition was

---

[1]ALJ Brezina verified that Plaintiff had received a list of attorneys and organizations that could represent her son's case and that she understood that some of these representatives would be willing to represent her case for no fee (R. 182-183).  Plaintiff indicated on the record that she understood her rights to representation, but wished to waive this right and executed a waiver.

fair, which Plaintiff clarified to mean "sometimes he can understand what you're saying; often he can't" (R. 186-87). Plaintiff stated that Claimant's hearing loss contributed to his low performance at school.

Claimant took Ritalin to treat his ADHD (R. 188). Plaintiff stated that the medication helped Claimant's symptoms, and his grades were improving. Claimant's ability to focus had also improved and he was able to work with his peers, but he still had a problem with his temper (R. 189). At times, Claimant had difficulty understanding his teacher and completing his assignments (R. 190). He enrolled in an after school program at his elementary school where he received additional help with his schoolwork. Claimant's attendance at school was fine, normally only missing days for doctor's appointments (R. 191).

### 2.    *Claimant's Hearing Testimony*

Claimant also testified at the administrative hearing (R. 192-95). He testified that he liked school and enjoyed playing basketball and football with friends (R. 193). Claimant helped clean the house as one of his chores (R. 194). On the weekends, he played outside with his sister and brother.

### 3.    *Plaintiff's Teachers*

On May 20, 2003, Claimant's teacher, Barbara Auten, reported on his progress (R. 86). Ms. Auten indicated that Claimant could usually do 1-digit addition with help, but had difficulty with 1-digit subtraction. He was reading at the beginning level, but far below first grade level expectations. Ms. Auten opined that Claimant put some effort into his work, but became easily frustrated and refused to continue his work. Claimant needed much longer to complete schoolwork and often needed simple directions repeated many times. Finally, Ms. Auten

indicated that Claimant had problems paying attention in class, often wandered from his seat without permission, and was sometimes defiant toward adults.

On May 22, 2003, Ms. Auten also completed a teacher questionnaire (R. 66-73).  She reported that Claimant had problems with comprehension, recall and retaining information (R. 67).  It takes him longer than most children his age and grade level to complete his work.  She marked that Claimant had problems functioning in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself.  Ms Auten reported that the school was in the process of evaluating Claimant for special education services related to his hearing loss and possibly learning difficulty (R. 72).

On May 18, 2004, Claimant's teacher reported that he was very disrespectful during lessons and most days refused to do his work (R. 161).  Yet, when Claimant was "in the mood" he did fine.

### 4.    *Individualized Educational Program Team Report*

An Individualized Educational Program Team Report (IEP) was conducted for Claimant on May 20, 2004 (R. 89-93). The report found that Claimant was eligible for special education programs/services only for his hearing impairment (R. 90). The report recommended that the FM system be used to maximize Claimant's hearing in the general education classroom the following year (R. 91).

### 5.    *Medical Evidence*

On January 20, 2003, Claimant was seen at the Children's Hospital of Michigan for complaints of vomiting and abdominal pain (R. 94-100).  Claimant's doctor noted a history of umbilical hernia repair one week earlier (R. 94).  Upon examination, it was

4

discovered that Claimant had a heart murmur (R. 100).  Claimant was discharged the following

day having been treated for dehydration and referred for a cardiac examination.

On February 12, 2003, Claimant was examined by cardiologist Daniel R. Turner, M.D.

(R. 101-02).  An electrocardiogram showed sinus rhythm with an exaggerated sinus arrhythmia.

Dr. Turner suspected that Claimant's heart murmur was innocent, but ordered further testing to

rule out atrial septal defect (R. 102).[2] Claimant was given no restrictions on his activities but

needed to be allowed to rest if he complained of fatigue (R. 105).

On March 21, 2003, an audiological evaluation showed that Claimant suffered from

unilateral hearing loss in the right ear (R. 106-18).  The examiner recommended that Claimant

receive preferential seating in the classroom and that he needed to sit with his left ear toward the

teacher (R. 106).  The examiner further recommended support services of an educational

audiologist and a teacher consultant of the hearing impaired.

On June 5, 2003, Claimant underwent a consultative physical examination performed by

C.C. Pujara, M.D., at the request of the state agency (R. 119-20).  Dr. Pujara noted that

Claimant was diagnosed with asthma when he was 3 months old and had on and off problems

with wheezing since that time (R. 119).  Claimant was on Albuterol through nebulizer

treatments as needed.  Upon examination, Claimant had good breath sounds and no adventitious

sounds (R. 120).  Dr. Pujara noted that Claimant had 15 % decreased hearing in his in his right

ear, mild to moderate asthma related to activities and change of weather, a heart murmur,

and an irregular heart beat.

On June 18, 2003, a Childhood Disability Evaluation Form was completed by a DDS

---

[2] There is no evidence in the record that this testing was ever performed.

medical consultant (R. 123-28). The state agency expert concluded that the child's combination of impairments were severe, but that they did not meet, medically equal, or functionally equal any of the listed impairments (R. 123). The evaluator further opined that Claimant had a marked limitation in his health and physical well-being due to his hearing loss, asthma, and heart murmur, but that he had no limitations in any other areas of functioning (R. 127).

On July 15, 2003, Claimant underwent a psychological examination with consultative examiner John J. Jeter, Ph.D. (R. 129-32). Dr. Jeter noted that Claimant's vision and hearing did not appear to be a problem for the assessment (R. 129). Upon examination, Dr. Jeter observed that Claimant's thoughts were organized, logical, and easy to follow (R. 130). Claimant did not exhibit any unusual or bizarre behavior, his frustration tolerance was good, as was his tolerance for positive criticism. Claimant was able to use problem solving strategies with task completion, and his responses were within normal limits. His attention, focus and persistence were good. Dr. Jeter identified no ADHD or ADD symptomology. Claimant's had an IQ of 101, placing him in the average range of cognitive functioning (R. 131).

On May 20, 2004, pediatric treatment notes reported that Strattera was not working to treat Claimant's ADHD (R. 139). Claimant's mother reported that it took him a long time to finish work and that he was jittery. Claimant's medication was changed to Ritalin (R. 140). The doctor stated that Claimant had no hearing in his right ear and that he required a hearing aid (R. 139-40).

6

6.   *Evidence Submitted After the January 26, 2005, decision to the Appeals Council* [3]

The Wayne County Department of Health conducted hearing evaluations of Claimant on October 20, 2005, November 24, 2003, and November 7, 2002 (R. 170-172).  The reports suggested that Claimant be seated in front of the classroom with his left ear toward the speaker at all times.

On April 11, 2005, Claimant's teacher, Ms. Carol Janiczek, reported that he had trouble staying on task and that he could be easily distracted by activity in the room (R. 175).  She further observed that Claimant seemed to get along with other students in the classroom, but there were times when he would act aggressively.

On April 14, 2005, Claimant's principal, Ms. Deborah Hayes, reported that Claimant enrolled in the first grade at Holbrook Elementary School on September 3, 2002, but was retained that year due to low academic performance (R. 174).  She noted that the Wayne County Department of Health Hearing Program diagnosed Claimant deaf in his right ear.

On April 15, 2005, Claimant's Title 1 Reading teacher, Ms. Kathleen Anderson, reported that Claimant had difficulty staying focused and being on task (R. 173).  He was very easily distracted by day to day "normal" school and classroom activity.  Claimant was at times "pouty"

---

[3] Because this evidence was not before the ALJ when he rendered the final decision of the Commissioner, it cannot be considered for substantial evidence review. *See Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). The only purpose for which this Court can consider this additional evidence is to determine whether this case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cotton v. Secretary of Health and Human Services*, 2 F.3d 692, 695-96 (6th Cir. 1993). This court may remand the case if the additional evidence is new and material, and if there was good cause for failure to incorporate the additional evidence into the record at a prior hearing. 42 U.S.C. § 405(g) (sentence six); *See Wyatt*, 974 F.2d at 685; *Casey v Secretary of Health and Human Services*, 987 F.2d 1130, 1233 (6th Cir. 1993).

and refused to complete his work, but was able to finish it "if he only just tries to do it." His behavior was sometimes aggressive toward other students.

### 7. *The ALJ's Decision*

ALJ Brezina found that Claimant was born September 21, 1996, was in the second grade of a regular education program and had never been engaged in substantial gainful employment through the date of his decision (R. 22). Claimant's significant hearing loss in the right ear and heart murmur qualified as severe impairments. Yet, the severity of Claimant's impairments did not meet or equal the requirements of any impairment listed in Part B of Appendix 1 to Subpart P (20 C.F.R. § 416.924.(d)(1), 416.925 and 416.926) (the "Listing"). Moreover, ALJ Brezina found that Claimant did not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning and did not functionally equal the severity of the listings (20 C.F.R. § 416.924.(d)(2) and 416.926a). ALJ Brezina concluded that Claimant had not been under a "disability" at any time from the alleged onset date through the date of his decision.

ALJ Brezina found that Claimant's ADHD did not qualify as a severe impairment (R. 18). He noted that a psychological examination performed by Dr. Jeter found that Claimant's responses were within normal limits; his attention, focus and persistence were good; and there were no ADHD or ADD symptomology identified. Moreover, Plaintiff testified that Claimant's medication has had a positive effect on his ADHD.

ALJ Brezina evaluated the functional limitations resulting from Claimant's impairments in six domains, as required by 20 C.F.R. § 416.926a. The ALJ found that Claimant had a marked limitation in health and physical well-being, less than marked limitations in self-care and no

8

limitations in any other areas of functioning (R. 20-22).  In so finding that Claimant had less than marked limitations in self-care, the ALJ considered that Claimant's asthma was described as mild with no recent hospitalizations and that Claimant did require assistance from his mother when asthma attacks occurred (R. 21).  In so finding Claimant had a marked and not extreme limitation in health and physical well-being, the ALJ considered that Claimant required assistance in school in the form of an amplified FM system, but that he did not require special education classes (R. 22).  The ALJ also considered Claimant's mother's testimony that the support systems available to Claimant had improved his hearing ability and that his hearing was now "fair."  The ALJ noted that Claimant had no limitations with hearing with his left ear and that there was no indication in the record that he has required any ongoing medical treatment. Because Claimant did not have an "extreme" limitation in one area of functioning or a "marked" limitation in two areas, ALJ Brezina concluded Claimant was not disabled for purposes of eligibility for Supplemental Security Income payments.

## II.    Analysis

### A.    <u>Standards of Review</u>

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are

not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

There is a three step process in determining whether a child is "disabled" under the definition set forth in the Act. *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listing). *See* 20 C.F.R. § 416.924.

Under section 416.926(a), if a child's impairment - or combination of impairments - does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are functionally equivalent in severity to any of the listed impairments in the Listing. In assessing whether a child's impairment is functionally equivalent to a listed impairment, the *Elam* Court explained that the following areas of development may be considered: 1) cognition/communication, which is the ability or inability to learn, to understand and to solve problems through reasoning; 2) motor, which includes the ability or inability to use gross and fine motor skills to serve one's physical purposes; 3) social, which includes the ability or inability to form and maintain relationships with other individuals and groups; and 4) concentration, persistence or pace, which is the ability or inability to attend to and sustain concentration on an activity or task. *Elam ex rel. Golay*, 348 F.3d at 126 -127. These areas of

10

development were derived from the six "domains"[4] set forth in 20 C.F.R. § 416.926a:

> (i) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for yourself; and,
> (vi) Health and physical well-being.

20 CFR § 416.926a(b)(1).

A child is considered disabled when they show "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 CFR § 416.926a(d).

Marked limitation in a domain occurs when ones "impairment interferes seriously with ability to independently initiate, sustain, or complete activities," and an extreme limitation occurs when an impairments interferes "very seriously," something "more than marked."  20 CFR § 416.926a(e).  The Regulations acknowledge that ones "day-to-day functioning may be seriously limited when ... impairment(s) limits only one activity or when the interactive and cumulative effects of ... impairment(s) limit several activities." *Id.*

## B.   Factual Analysis

In her motion for summary judgment Plaintiff argues that substantial evidence does not support ALJ Brezina's decision (Dkt. #23).  A child is considered disabled pursuant to the Act if that individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.A. § 1382c(a)(3)(C)(i).  Because Plaintiff has not presented a direct challenge to ALJ

---

[4] Domains are defined as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a.

11

Brezina's determination that Claimant's impairment did not met or equal any impairment in the Listing, this analysis will move directly to a discussion of the matter in terms of the functional equivalent standard.  In order to determine whether Claimant's limitations due to hearing loss in the right ear, a heart murmur, and ADHD functionally equaled the Listing, ALJ Brezina was required to consider how Claimant functioned in the six domains, as described above.

### 1.    *Acquiring and Using Information*

The ALJ reasonably found that Claimant had no limitations in his ability to acquire and use information.  While Claimant's teachers reported some difficulty with Claimant's behavior and ability to learn, one teacher indicated that when Claimant was "in the mood" he did fine (R. 161).  Moreover, an Individualized Educational Program Team Report (IEP) conducted for Claimant found that he was eligible for special education programs/services only for his hearing impairment.  The report recommended that he remain in a general education classroom, but that an FM system be used to maximize Claimant's hearing (R. 91).  Claimant also had an IQ of 101, placing him in the average range of cognitive functioning (R. 131).  Although there are reports indicating some difficulty with learning, it cannot be said on this record that ALJ Brezina had less than a scintilla of evidence on which to base his conclusion that Claimant had no limitations in this area.  Moreover, an ALJ's decision is not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen,* 800 F.2d at 545.

### 2.    *Attending and Completing Tasks*

The ALJ reasonably found that Claimant had no limitations in his ability to attend to and complete tasks.  Psychological testing showed no symptoms of ADD or ADHD (R. 130).  Claimant showed good frustration tolerance, attention, focus and persistence.  In addition,

12

Claimant's mother testified that he responded well to Ritalin and that it improved his symptoms (R. 188).   Again, while Plaintiff's teachers noted some behavioral difficulty, it was not of such a severity that it was addressed in Claimant's IEP (R. 89-93).  Claimant was able to attend regular classes and was not recommended for special education beyond special assistance with his hearing.  Based on this record ALJ Brezina had substantial evidence on which to base his conclusion that Claimant had no limitations in this area.

### 3. *Moving About and Manipulating Objects*

This domain measures whether a claimant has limitations in the function of gross and fine motor skills.  20 C.F.R. 416.926a(j).  As a school-age child, Claimant's developing gross motor skills should allow him to move at a "efficient pace about [his] school, home, and neighborhood.[5]  His increasing strength and coordination should "expand [his] ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports." Claimants developing fine motor skills should "enable [him] to do things like use many kitchen and household tools independently, use scissors, and write."  The following are examples of limitations in functioning in this domain:

> (i) You experience muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with your motor activities (e.g., you unintentionally drop things).
> (ii) You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.
> (iii) You have difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike).
> (iv) You have difficulty with sequencing hand or finger movements.
> (v) You have difficulty with fine motor movement (e.g., gripping or grasping objects).

---

[5] School-age children are defined as those from age 6 to age 12.

(vi) You have poor eye-hand coordination when using a pencil or scissors.

*Id.*

The ALJ reasonably found that Claimant had no limitations in his ability to move about and manipulate objects. The evidence showed that Claimant was able to play basketball and football, with the limitations previously acknowledged by the ALJ. *See Elam ex. rel Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 127 (6th Cir. 2003) (recognizing that a child did not have marked limitations in this area where she actively participated in her basketball team). Claimant also helped clean the house as one of his chores and played outside with his sister and brother on the weekends (R. 194). Moreover, the record did not include any anecdotal or medical evidence that Claimant had difficulty carrying or holding objections or had difficulty walking or running. Therefore, on this record ALJ Brezina had substantial evidence on which to base his conclusion that Claimant had no limitations in this area.

### 4.   *Caring for Oneself*

The ALJ reasonably found that Plaintiff had less than marked limitations in his ability to care for himself (R. 21). The ALJ considered that Claimant's asthma was described as mild with no recent hospitalizations. The ALJ further noted that Claimant did require assistance from his mother when asthma attacks occurred. In addition, Plaintiff reported that Claimant was able to care for his own needs, such as bathing and dressing (R. 75). This constitutes substantial evidence on which to base his conclusion that Claimant had less than marked limitations in this area.

### 5.   *Health and Physical Well-Being*

This domain measures the cumulative physical effects of ones impairment and the

14

associated treatment, and is meant to consider those effects *not* considered in the "moving about and manipulating objects" domain.  20 C.F.R § 416.926a(l).  Some examples of the kind of limitations contemplated by the Act as limitations in this domain are as follows: generalized weakness, dizziness, agitation/excitability, lethargy, psychomotor retardation, somatic complaints, etc.  *Id.*

The ALJ reasonably found that Claimant had marked limitations in his health and physical well-being as a result of his hearing impairment, heart murmur and asthma (R. 21).  ALJ Brezina considered that Claimant required assistance in school in the form of an amplified FM system, but that he did not require special education classes (R. 22).  The ALJ also considered Claimant's mother's testimony that the support systems available to Claimant had improved his hearing ability and that his hearing was now "fair."  The ALJ noted that Claimant had no limitations with hearing with his left ear and that there was no indication in the record that he has required any ongoing medical treatment.  ALJ  Brezina's findings are consistent with those of the state examiner, who opined that Claimant had marked but not extreme limitations in this area (R. 127).  *See* 20 C.F.R. § 416.927(f)(2)(i) (state agency physicians are highly qualified physicians who are experts in Social Security disability evaluations).  Therefore, ALJ Brezina had substantial evidence on which to base his conclusion that Claimant had marked, but not extreme, limitations in this area.

### 6.   *Interacting With Others*

This domain considers how well one initiates and sustains emotional connections with others, develops and uses the language of one's community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  The

15

Regulations provide some guidance on this issue, by giving a brief tutorial on what is expected of a child in Claimant's age group with normal level functioning in this domain and giving some examples of limited functioning:

> (iv) School-age children (age 6 to attainment of age 12). When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.
> .....
>
> (3) Examples of limited functioning in interacting and relating with others.
> .....
>
> (i) You do not reach out to be picked up and held by your caregiver.
> (ii) You have no close friends, or your friends are all older or younger than you.
> (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
> (iv) You have difficulty playing games or sports with rules.
> (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
> (vi) You have difficulty speaking intelligibly or with adequate fluency.

20 CFR § 416.926a.

Plaintiff has not alleged that Claimant has no close friends or that he has problems communicating. To the contrary, the evidence showed that Claimant had friends at school, got along well with his brother and sister, and was understood well most of the time by both those who knew and did not know the child (R. 74, 191, 193). Claimant's mother also stated that he was not disrespectful to adults (R. 74). The ALJ also considered his own observations of Claimant, namely, that he had no difficulty understanding questions and that he responded appropriately (R. 17). Therefore, ALJ Brezina had sufficient evidence on which to base his

16

conclusion that Claimant had no limitations in this area.

In sum, ALJ Brezina articulated specific reasons in his decision which were reasonably supported by substantial evidence in the case record.  It is not sufficient that there is some evidence in the record to support a contrary decision.  *Gooch v. Sec. of Health & Human Services*,  833 F.2d 589, 592 (6th Cir.,1987) , *Mullen, supra*, 800 F.2d at 545.  This Court must determine whether the ALJ's decision is supported by "[m]ore than a mere scintilla" of evidence. *Richardson,* 402 U.S. at 401.  Because his decision is so supported, the ALJ's determination must be upheld.

### III.   EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

In her brief, Plaintiff introduces evidence submitted first to the Appeals Council, but does not make an argument for remand based on this "new" evidence.  Where a party presents new evidence on appeal to the Appeals Council that denies review or to the federal court for the first time, the Court can consider the evidence only to determine if a remand is appropriate under sentence six of 42 U.S.C. § 405(g) for further consideration of the evidence but only if the party seeking remand shows that the new evidence is material.  In this case, Plaintiff has not provided this Court with an argument for a sentence six remand.  Nor is it evident that this evidence warrants a remand under sentence six of § 405(g).  The April 2005 reports of Claimant's teachers that his behavior was at times erratic was essentially no different than earlier reports in the record before ALJ Brezina.  Similarly, the Wayne County Department of Health's diagnosis that Claimant was deaf in his right hear was no different than earlier opinions by Claimant's doctors in the record before ALJ Brezina.

This Court need only consider issues that have been fully developed by the briefs or in

17

the record.  Issues that are adverted to in a perfunctory manner without some effort to develop an argument related to them are generally deemed waived.  *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.2002).  Further, "[i]t is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . .  put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997).  Therefore, there is no basis for this court to order a remand based on this evidence first presented to the Appeals Council.

IV.    **EVIDENCE SUBMITTED TO THE DISTRICT COURT**

     Plaintiff alleges that Claimant is now in special education classes where he receives one on-one help (Dkt. #23).  Yet, this appears to be new evidence which was not previously before the ALJ or the Appeals Council.  Indeed, at the time of the ALJ's decision, Claimant was attending regular classes and was eligible for special education programs/services only for his hearing impairment (Tr. 90).  Claimant's IEP recommended use of an FM system to maximize Claimant's hearing in the general education classroom the following year (R. 90).  As noted above, where a party presents new evidence on appeal to the Appeals Council that denies review or to the federal court for the first time, the Court can consider the evidence only to determine if a remand is appropriate under sentence six of 42 U.S.C. § 405(g) for further consideration of the evidence but only if the party seeking remand shows that the new evidence is material.  In this case, Plaintiff has not provided this Court with an argument for a sentence six remand.

     Moreover, additional evidence is material only if it concerns Plaintiff's condition prior to the ALJ's hearing decision.  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  Thus, evidence of the aggravation or deterioration of a condition is not relevant since it "does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of*

18

*Health & Human Servs*., 865 F.2d 709, 712 (6th Cir. 1988).  The appropriate remedy in such a case is to initiate a new claim for benefits alleging an onset date consistent with the aggravation or deterioration of a condition.  *Id.*  Here, Plaintiff has not shown that this new evidence of one-on-one special education services is time relevant, such that it would be deemed material for purposes of a sentence six remand.

## V.    RECOMMENDATION

For the reasons stated above, it is Recommended that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 30, 2007                          s/Steven D. Pepe
Ann Arbor, Michigan                          United States Magistrate Judge

Certificate of Service

I hereby certify that on <u>April 30, 2007</u>,  I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>Janet L. Parker, AUSA</u>, and I hereby certify that I have mailed United States Postal Service the paper to the following non-ECF participants: <u>Sparkle Thompson, 4120 University Pl, Detroit, MI 48224, Social Security Administration, Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606</u>

s/ James P. Peltier
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502